IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: * | |
| HERSHEY OFFICE, L.P., * | CHAPTER 11 |
|     Debtor-in-Possession * | |
| * | CASE NO. 1:13-bk-04745MDF |
| PNL NEWCO, II, LLC, assignee of * | |
| SOVEREIGN BANK, N.A., successor- * | |
| in-interest by merger to * | |
| Independence Community Bank, * | |
|     Movant * | |
| * | |
|     v. * | |
| * | |
| HERSHEY OFFICE, L.P., * | |
|     Respondent * | |

## **OPINION**

PNL Newco II, LLC ("PNL") filed a motion for relief from the automatic stay (the "Motion") to pursue its state law rights against real property owned by Hershey Office, LP ("Debtor"). For the reasons set forth below, the Motion will be granted.

### I. Procedural and Factual History

Debtor filed a voluntary petition under Chapter 11 on September 16, 2013. On Schedule A, Debtor listed its interest in three parcels of real property located at 515, 555, and 565 E. Chocolate Ave., Hershey, Pennsylvania. Relief from the stay is being sought only as to the 555 E. Chocolate Ave. property. At the time the petition was filed, 555 E. Chocolate Ave. was valued at $1.8 million with a secured claim held by PNL listed in the same amount.

Debtor was formed to acquire and develop 555 E. Chocolate Ave. Debtor erected an office building on the site in 2004 with financing from Integrity Bank. In August 2005, Independence Community Bank ("Independence") refinanced the project for $2 million evidenced by a seven-year term note (the "Note") dated August 17, 2005. Under the terms of the

Note, Debtor commenced making payments of $11,355.78 per month in September 2005. The Note specifies that payments are due the first day of the month until the unpaid principal balance is paid in full. The Note was assigned to Sovereign Bank ("Sovereign") after Independence was acquired by Sovereign, but before Debtor filed its petition.

The Note includes the following provisions relevant to Debtor's payment obligations:

> **4. Application of payments**. If at any time Lender receives . . . any amount applicable to the indebtedness which is less than all amounts due and payable at such time, Lender may apply that payment to amounts then due and payable in any manner and in any order . . . . Borrower agrees that neither Lender's acceptance of a payment . . . in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute . . . either a waiver of the unpaid amounts or an accord and satisfaction.

***

> **6. Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium . . . and all other amounts payable under this Note . . . shall at once become due and payable, at the option of Lender, *without any prior notice to Borrower*. Lender may exercise this option to accelerate regardless of any prior forbearance. (emphasis added.)

***

> **12. Forbearance.** Any forbearance by Lender . . . shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date . . . , or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment . . . or to exercise any right or remedy with respect to any failure to make prompt payment.

***

**Schedule B
Modifications to Note**

(1) The first sentence of paragraph 7 "Late Charge" is hereby deleted and the following is substituted in lieu thereof:

"If any monthly installment due hereunder is not received by Lender on or before the 15th

2

day of each month or if any other amount payable under this Note or under the Security Instrument or any other Loan Document is not received by Lender within 10 days after the date such amount is due, Borrower shall pay to Lender, immediately and *without demand by Lender*, a late charge equal to 5 percent of such monthly installment or other amount due." (emphasis added) (quotes in original) [1]

Movant's Ex. 2.

The Mortgage executed in conjunction with the Note provides that if Debtor "shall have []made all payments required hereunder and under the Note of even date herewith within applicable grace periods,[2] if any, and not otherwise defaulted under any provision" under either instrument, unless the default has been cured under the terms of the instrument, Debtor may exercise an option to extend the maturity date of the Note for five years. Movant's Ex. 3, Ex. B, p 2, ¶ 2. To exercise this option, Debtor was required to notify Sovereign in writing at least sixty days prior to the original maturity date of September 1, 2012 of its intent to exercise the option and to pay an extension fee of .50 % of the unpaid principal balance.

From September 2005 until October 2006, Debtor made all payments during the grace period under the terms of the Note and Mortgage. Occasionally, payments were made on or before the first of the month. A few payments were made after the fifteenth of the month between October 2006 and October 2010, but most were made within the fifteen-day grace period. Beginning October 2010, Debtor routinely made monthly payments after the fifteenth of the

---

[1] Paragraph 7 of the Note, which was modified by ¶ 1 of Schedule B, provides that late charges are assessed on payments that are not received on or before ten days after the due date.

[2] "Grace period" is defined as a period of time beyond a due date during which a financial obligation may be met without penalty or cancellation. *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 19 Dec. 2013. http://www.merriam-webster.com/dictionary/grace period. The Note did not define the period between the first of the month and the fifteenth of the month as a "grace period," but it provided that the late fee would not be imposed until after the fifteenth and, thus, functioned as a grace period.

month. Debtor had difficulty making the Note payments after it lost its largest tenant, which had been paying approximately $14,000 per month in rent. Because of this significant reduction in income, Debtor's limited partners had to make cash infusions to enable Debtor to meet its obligations under the Note. Debtor also delayed monthly payments until it collected all rents due for a particular month. The September 2011 payment was not made until October 3, 2011, and payments for October and November 2011 were not received by Sovereign until November 29, 2011. Monthly statements sent by Sovereign noted whether late charges had been assessed during the period and whether the charges had been waived or paid. Late charges were assessed and paid by Debtor for payments made in September, October, November, and December 2011 and in June 2012.

On February 2, 2012, Sovereign formally notified Debtor that it had obtained the Note from Independence and that it "did not intend to refinance the indebtedness or otherwise renew or extend the Maturity Date of the Note." Movant's Ex. 7. Sovereign further notified Debtor that it should be prepared to satisfy the Note by September 1, 2012. On May 21, 2012, Sovereign notified Debtor that it was in default of the Note due to its failure, among other things, to "provide [Debtor's] 2011 certified income and expense statement and a current rent roll." Movant's Ex. 12. Debtor eventually supplied the requested documents.

Although it had been notified by Sovereign that the maturity date of the Note would not be extended, Debtor informed Sovereign in June 2012 that it intended to exercise the extension option and enclosed a check for .50% of the unpaid loan balance. Sovereign did not respond directly to Debtor's attempt to exercise the renewal option, but it returned the check and sent a letter in August stating that Debtor and the limited partners who had guaranteed the Note were in

4

default.[3] Sovereign further notified Debtor that it had elected to increase the interest rate charged on upaid principal from 5% to the default rate of 16% and demanded the payment of all unpaid principal and interest on or before the maturity date.

After Debtor attempted to exercise the extension option in June 2012, no further payments were made to Sovereign. Sovereign assigned the Note to PNL on March 21, 2013, and no payments were made by Debtor to PNL after the assignment. On July 12, 2013, PNL sent letters to two tenants at 555 E. Chocolate Ave. stating that, effective immediately, all rents should be remitted to PNL. Since this date, PNL has been receiving approximately $10,000 per month in assigned rents with the balance of approximately $2650 per month being paid to Debtor.[4] Notwithstanding the provision in the Mortgage providing for the assignment of rents, Debtor did not seek PNL's concurrence to use cash collateral, nor did it file a motion requesting the Court to approve the use of cash collateral.

At the hearing on PNL's motion, the parties stipulated that Debtor has no equity in 555 E. Chocolate Ave. and that the unpaid principal balance on the Note is $1,795,040.28. Briefs on this matter have been filed, and it is ready for decision.[5]

---

[3]Debtor sent the letter attempting to exercise the option and a check twice. Both attempts were rejected by Sovereign.

[4]The record is unclear on this point, but PNL has not asserted that it is entitled to collect rents from the remaining tenants of 555 E. Chocolate Ave.

[5]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to contested matters pursuant to Fed. R. Bank. P. 9014.

### III. Discussion

Section 362(a) of the Bankruptcy Code imposes a broad injunction against actions to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Under § 362(d)(1), relief from the automatic stay may be granted for cause, including a lack of adequate protection of a creditor's interest in property of the estate. Relief also may be granted if a debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). The party requesting relief from the stay has the burden of proof on the issue of a debtor's equity in the property, and the party opposing the relief has the burden of proof on all other issues, including whether the property is necessary to an effective reorganization. 11 U.S.C. § 362(g). *See Nazareth Nat. Bank. v. Trina-Dee, Inc.*, 731 F.2d 170, 171 (3d Cir. 1984).

*A. The adequate protection requirement of 11 U.S.C. § 362(d)(1)*

PNL asserts that it should be granted relief because its interest in 555 E. Chocolate Ave. is not adequately protected. Adequate protection comes in a variety of forms, including periodic payments, additional or replacement liens, and other relief that provides the "indubitable equivalent" of the secured creditor's interest in the property. *R.T.C. v. Swedeland Dev. Grp, Inc. (In re Swedeland Dev. Grp, Inc.),* 16 F.3d 552, 564 (3d Cir. 1994)*;* 11 U.S.C. § 361. Typically, adequate protection is provided to a creditor through periodic payments. *In re AMR Corp.*, 490 B.R. 470, 478 (S.D.N.Y. 2013); *In re Biltwood Properties LLC*, 473 B.R. 70, 74 (Bankr. M.D. Pa. 2012).

Debtor has made no post-petition mortgage payments even as it argues that it was entitled to extend the maturity date of the Note and, presumably, continue to make monthly payments.

6

The only payments currently being received by PNL are the assigned rents of approximately $10,000 per month. This amount is less than the payment amount of $14,056 required under the pre-default terms of the Note in 2012. Therefore, although PNL is receiving some periodic payments, they are insufficient to provide adequate protection when Debtor has admitted that there is no equity in 555 E. Chocolate Ave. Debtor has made no proposal to make payments to PNL and only suggests that if additional tenants could be obtained for the office building and new financing could be arranged, Debtor could reorganize.

Debtor attempts to deflect PNL's assertion that its interest is not adequately protected by arguing that Debtor did not default under the Note. This assertion is not supported by the record. Debtor was required to make all payments by the due date in the Note. No late charge would be imposed, however, unless a payment was not received by the fifteenth of the month. There were at least five payments that were paid beyond the fifteenth of the month and for which a late charge was imposed by Sovereign and paid by Debtor. On these facts alone, Debtor was not entitled to exercise the option to extend the maturity date on the loan.[6]

*B. Lack of equity in property not necessary to an effective reorganization – § 362(d)(2)*

Relief from the automatic stay also must be granted if a debtor does not have equity in the property subject to the creditor's lien and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Even if a debtor lacks equity in the property, it has the opportunity to avoid modification of the stay by demonstrating that the property is necessary for

---

[6]Debtor attempts to characterize payments made as "timely" if they eventually were received by Sovereign and any late charges imposed were paid. Whether or not the payments can be characterized as "timely" is not germane to the issue at hand. The issue is whether all the payments were made within the grace period, and they were not.

7

an effective reorganization. *In re Ripley*, 412 B.R. 690, 698 (Bankr. E.D. Pa. 2008). *See also In re Epic Capital Corp.,* 290 B.R. 514, 520 (Bankr. D. Del. 2003)(party opposing relief bears burden to prove that collateral is necessary for an effective reorganization). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs, Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 370-71 and nn. 12 & 13) (5th Cir. 1987). As noted by the Court of Appeals for the Third Circuit, while "a lift stay hearing should not be transformed into a confirmation hearing," "[t]he 'effective reorganization' requirement enunciated by the Supreme Court . . . require[s] a showing by a debtor . . . that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 (3d Cir. 1993) (quoting *In re 266 Washington Assocs.,* 141 B.R. 275, 281 (Bankr. E.D.N.Y. 1992), *aff'd,* 147 B.R. 827 (E.D.N.Y. 1992)).

In the within case Debtor has not proposed a plan, but Daniel Sheffey ("Sheffey"), President of General Management Group, Inc., Debtor's general partner, testified at the hearing that Debtor intended to move ahead with the development of the adjacent parcels and to obtain new tenants for 555 E. Chocolate Ave., but he admitted on cross examination that Debtor lacked

8

the financing necessary to develop the multi-parcel project.[7] Sheffey further testified that there were parties that were interested in investing in the project, but that "given the current uncertainties and the ownership structure and the debt, there's no way to consummate any sort of agreement to move forward." N.T. 127. The Court agrees. No evidence was presented that Debtor's plans for reorganizing its affairs is anything more than a pipe dream. Accordingly, I also conclude that PNL is entitled to relief from the stay under § 362(d)(2).

## IV.  Conclusion

Debtor having failed to establish that it has provided PNL with adequate protection of its interests in the 555 E. Chocolate Ave. or that retention of the property is necessary for an effective reorganization, and the parties having agreed that Debtor has no equity in the property, an order will be entered granting PNL relief from the automatic stay.

**By the Court,**

_Mary D France_
Chief Bankruptcy Judge

Date:  December 20, 2013

---

[7]Debtor's plans were altered after the hearing inasmuch as a motion to sell 515 E. Chocolate Ave. for $1.8 million was filed on December 3, 2013. Considering the sale price, outstanding liens against the property and anticipated costs of sale, even if the sale were approved, it will not generate sufficient funds to enable Debtor to reorganize or to satisfy PNL's claims.